## TEXAS MUT. LIFE INS. ASS'N v. ADAMS.
### No. 2662.

Court of Civil Appeals of Texas. Beaumont.
Jan. 4, 1935.

Rehearing Denied Jan. 9, 1935.

Richardson & Lanier, of Jasper, for appellant.

B. A. Hamilton and Geo. P. Kirkpatrick, both of Jasper, and J. R. Bogard, of San Augustine, for appellee.

WALKER, Chief Justice.

On October 24, 1928, appellant, Texas Mutual Life Insurance Association, issued to R. C. Adams, of Jasper, a policy of life insurance in the sum of $5,000 designating Mrs. Maude Adams, wife of the insured, as beneficiary. The premiums on this policy were the death assessments in the sum of $5.50— a new assessment being made on the death of a member in the class to which the insured had been assigned by appellant. The insured regularly paid all death assessments against his policy of which he had notice up to the time he was taken sick on December 3, 1932; he died on December 30th following.

Appellant refused to pay the policy on the ground that it had been forfeited for the failure of the insured to pay a death assessment for $5.50 dated December 2, 1932, for the death of Hiram B. Stevens, with which this policy was properly chargeable. Thereupon appellee, the beneficiary, filed suit to recover the principal of this policy in the sum of $5,000. Appellant answered by pleas of forfeiture, specially pleading the following provisions of the policy:

"A. This insurance is granted in consideration of the application herefor, which is hereby made a part of this contract, and of the payment of each assessment which shall be levied by the directors of the Texas Mutual Life Insurance Association, upon the death of a member hereof, as follows: $5.50 upon the death of any member in this class within ten days from date of notice of such death, and one assessment per year as annual dues of $5.50 to be paid on or before the 1st day of October each year.

"B. It is further agreed that failure to pay any assessment so levied within ten days from date of notice or to pay said annual dues shall forfeit all claims as a member of The Texas Mutual Life Insurance Association.

"C. It shall be the duty of each member to keep the Secretary of The Texas Mutual Life Insurance Association informed of the post-office address of such member, and in giving notice of any assessment it shall not be necessary for the Texas Mutual Life Insurance Association to do more than mail a written notice, properly stamped and addressed to such member at such last address as furnished the Association by such member."

The policy also contained the following additional provisions: "In giving notice of any assessment it shall not be necessary for the Texas Mutual Life Insurance Association to do more than mail a written notice, properly stamped and addressed to such member at such last address as furnished the Association by such member."

The by-laws stipulated that the failure to pay an assessment should "act as a complete forfeiture of all the rights of such member of said Association to any claim against said Association and said certificate issued to said member by the Association shall become null and void and of no effect." The pleadings of the parties presented only one issue against appellant's liability, and that was whether or not appellant mailed to the insured the "written notice" of the assessment for the death of Hiram B. Stevens. This issue was submitted to the jury by the following special issues, all of which were answered in the negative:

"Special Issue No. 1. Do you find from a preponderance of the evidence that Robert C. Adams, or anyone acting for him, was notified by the defendant, Texas Mutual Life Insurance Association, of any assessment made on him on December 2nd 1932?

"Special Issue No. 2. Do you find from a preponderance of the evidence that the defendant, Texas Mutual Life Insurance Association, deposited in the United States mail at Waco, Texas, addressed to Robert C. Adams at Jasper, Texas, a properly stamped and addressed notice of an assessment made against him on December 2nd 1932?

"Special Issue No. 3. Do you find from a preponderance of the evidence that Robert C. Adams, or anyone acting for him, was notified by the defendant, Texas Mutual Life Insurance Association, of any assessment made on him on December 9th, 1932?

"Special Issue No. 4. Do you find from a preponderance of the evidence that the defendant, Texas Mutual Life Insurance Association, deposited in the United States mail at Waco, Texas, addressed· to Robert ·C. Adams at Jasper, Texas, a properly stamped and addressed notice of an assessment made against him on December 9th, 1932?"

On the verdict of the jury judgment was entered in favor of appellee for the sum of $5,000 with interest, costs, etc.

■ We overrule the assignments that the findings of the jury are without support in the evidence and so against the great weight and preponderance, of the evidence as to be clearly wrong. Appellant offered abundant testimony that notice of the assessment on December 2, 1932, was mailed to the insured on that·date; and that a.second notice of the same assessment was mailed on December 9th following. But appellee offered testimony to the effect that the insured was confined to his bed from the date he was taken sick until his death and, therefore, had no opportunity to call for his mail; that appellee had access to all mail brought to the insured while he was sick and confined to his bed and that these notices were not delivered to him; and the insured's son testified that he was the only person who called for his father's mail during his father's last sickness,· and that these notices were never delivered to him nor received by him. This testimony raised the issues and supported the verdict of the jury that the insured never received the notices of the assessment for December 2, 1932. When deposited in the post office, the delivery of the United States mail to the addressee follows with such certainty that the failure of the addressee·to receive a letter raises the issue

that it was not mailed. On this construction of the testimony the findings of the jury to the effect that the notices were not mailed have support.

Appellant presents the following exceptions to the court's charge. First, it is claimed that the court erred in refusing to define the term "properly stamped," as used in the charge of the·court and the policy of insurance. There are two answers to this contention:

■ (a) The evidence showed without controversy that, if the notices were mailed, they were mailed as third-class matter, with the knowledge and consent of the postmaster at Waco, and that the notices as mailed were in fact third-class matter. So, as no issue was ·made that the notices actually mailed were in fact "properly stamped," the court was not required to define that term. The question was one of law whether or not under the policy appellant had the right to declare a for-feiture on a notice mailed third class.

■ (b) But the policy provided for a "written notice," not a printed notice, nor one subject to a third-class classification. Forfeiture provisions are strictly construed against the one claiming the forfeiture. The penalty of forfeiture in this policy was harsh in the extreme, in that it provided for forfeiture merely upon the *mailing* of the notice, even though the insured may have been ignorant of the fact that the notice was mailed. The language of the policy is ambiguous as to whether the notice was to be of a character constituting first-class mail or third-class mail. Since first-class mail would have constituted a greater protection to the insured, the policy is subject to the construction that the parties were contracting for notice by first-class mail. Though the insured had the right to contract for forfeiture upon notice by third-class mail, the policy should not be so construed unless the language used compels that construction. And as the language used was ambiguous, we resolve its construction in favor of the insured. It is our conclusion that, to claim the forfeiture, appellant was required to show that the notice of the assessment was mailed as first-class mail matter; and since the undisputed evidence offered by appellant is to the effect that the notices were sent by third-class mail, they were insufficient to support the forfeiture pleaded as a defense. It follows that the controlling issue, conceding that the notices were in fact mailed, was whether or not they were in fact received by the insured, which issue was resolved by the jury against appellant.

■ Appellant's exceptions to the submission of the issues relating to the second notice are overruled. In the first place, this issue was wholly immaterial because the policy did not provide for a second notice and the materiality of this notice was not shown by the pleadings. And appellant's testimony, both that of its officers and the language of the contract, was to the effect that the forfeiture was based on the failure of the insured to reply to the first notice. Again, the second notice was not mailed until the 9th of December. There is no contention that this notice could have reached the insured in time for a remittance by him to have reached appellant's office in Waco within the ten-day forfeiture period after December 2d.

The judgment of the lower court is in all things affirmed, and it is accordingly so ordered.